Slip Op. 09-45

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| UNITED STATES STEEL CORPORATION AND ARCELORMITTAL USA, INC., | : : : : : | |
| Plaintiffs, | : : | |
| and | : : | |
| NUCOR CORPORATION | : : | **Before: Judith M. Barzilay, Judge** |
| Plaintiff-Intervenor, | : : | **Consol. Court No. 07-00475** |
| v. | : : | |
| UNITED STATES, | : : | |
| Defendant, | : : | |
| and | : : | |
| CORUS STAAL BV, | : : | |
| Defendant-Intervenor. | : : : | |

## **OPINION**

[Defendant and Defendant-Intervenor's Motions to Dismiss are granted.]

Dated: May 18, 2009

*Skadden Arps Slate Meagher & Flom, LLP* (*Robert E. Lighthizer, Jeffrey D. Gerrish, Ellen J. Schneider,* and *Luke A. Meisner*) for Plaintiff United States Steel Corporation.

*Stewart and Stewart* (*Terence P. Stewart* and *William A. Fennell*) for Plaintiff ArcelorMittal Steel USA, Inc.

*Wiley Rein* (*Timothy C. Brightbill*) for Plaintiff-Intervenor Nucor Corporation.

*Michael F. Hertz*, Deputy Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke*) for Defendant United States.

*Steptoe & Johnson LLP* (*Richard O. Cunningham*, *Joel D. Kaufman*, *Alice A. Kipel*, and *Jamie B. Beaber*) for Defendant-Intervenor Corus Staal BV.

      **BARZILAY, JUDGE:** Plaintiffs United States Steel Corporation ("U.S. Steel") and ArcelorMittal USA, Inc. ("ArcelorMittal") (collectively, the "Plaintiffs") challenge the U.S. Department of Commerce ("Commerce") decision to use offsetting to calculate the weighted-average dumping margins as such and as applied in certain antidumping duty proceedings, pursuant to 28 U.S.C. § 1581(i).[1] *Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin During an Antidumping Investigation; Final Modification*, 71 Fed.

---

[1] The "dumping margin" refers to the amount by which the normal value exceeds the export price or constructed export price, expressed functionally as DM = NV - (EP or CEP). 19 U.S.C. § 1677(35)(A). The "weighted-average dumping margin" expresses the dumping margin as a percentage and is determined by dividing the aggregate dumping margins of a specific exporter or producer by the aggregate export or constructed export prices of such exporter or producer. § 1677(35)(B).

      Offsetting is the practice whereby Commerce, when calculating the numerator in the weighted-average dumping equation, offsets sales made at less than fair value with fair value sales. Zeroing is a practice that is related to, but distinct from, offsetting, whereby Commerce gives the sales margins of merchandise sold at or above fair value prices an assumed value of zero. *See Corus Staal BV v. Dep't of Commerce*, 395 F.3d 1343, 1345-46 (Fed. Cir. 2005). With zeroing, Commerce uses only the sales margins of merchandise sold at less than fair value prices to calculate the final dumping margin. *See id*.

      Finally, an "as such," or facial, challenge contests the general policy to use a law, regulation or practice, whereas an "as applied" challenge argues against its application in a particular proceeding.

Reg. 77,722, 77,722 (Dep't Commerce Dec. 27, 2006) ("*Section 123 Determination*").[2]

Specifically, Plaintiffs allege that Commerce's *Section 123 Determination*, and the application of that determination to a specific antidumping investigation, is not in accordance with law. U.S. Steel Compl. ¶¶ 20-22; AcelorMittal Compl. ¶¶ 18-21. Nucor Corporation ("Nucor") and Corus Staal BV ("Corus") join as a Plaintiff- and Defendant-Intervenor, respectively, pursuant to USCIT R. 24.[3] Here, Defendant United States requests that the court, under USCIT R. 12(b)(1) and (b)(5), dismiss the Plaintiffs' complaints, alleging that the Court lacks subject matter jurisdiction over the claims because (1) the challenge here essentially contests the final results of a Section 129 determination,[4] (2) no provision of the United States Code provides for the judicial

---

[2] Commerce twice delayed the implementation of the *Section 123 Determination*, with the change in policy ultimately taking effect on February 22, 2007. *Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margins in Antidumping Investigations; Change in Effective Date of Final Modification*, 72 Fed. Reg. 1,704, 1,704 (Dep't Commerce Jan. 16, 2007); *Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margins in Antidumping Investigations; Change in Effective Date of Final Modification*, 72 Fed. Reg. 3,783, 3,783 (Dep't Commerce Jan. 26, 2007).

[3] Corus filed a Motion to Dismiss on February 22, 2008 in response to U.S. Steel's complaint. U.S. Steel responded to Corus's motion, but the court stayed a decision on those proceedings pending a motion to consolidate Court Nos. 07-170, 07-201, 07-475, and 08-015. On September 4, 2008, the court consolidated Court Nos. 07-475 and 08-015 to form the current action. Defendant has since moved the court to dismiss the case here, with all other parties filing their respective response briefs. The court notes that while it addresses only Defendant's arguments by name below, it also considers Corus's contentions, which mirror those of the United States, in its analysis.

[4] In Consol. Court No. 07-170, Plaintiffs contest Commerce's *Section 123 Determination* under an alternative jurisdictional provision, 28 U.S.C. § 1581(c), both as such and as applied to the specific investigation addressing the subject merchandise. U.S. Steel Br. 4. Additionally, Plaintiffs challenge the final results of the Section 129 determination that resulted in the revocation of the antidumping duty order on the subject merchandise. *Id.*; *Implementation of the Findings of the WTO Panel in US–Zeroing (EC): Notice of Determinations under Section 129 of the Uruguay Round Agreements Act and Revocations and Partial Revocations of Certain Antidumping Duty Orders*, 72 Fed. Reg. 25,261, 25,262 (Dep't Commerce May 4, 2007)

review of a Section 123 determination, (3) the United States has not waived its sovereign immunity from being subject to such a claim, and (4) the *Section 123 Determination* is not an agency action under the Administrative Procedure Act ("APA"). Additionally, Defendants allege that Plaintiffs (5) lack standing and (6) have otherwise failed to state a claim upon which relief may be granted under USCIT R. 8(a). The court grants Defendant and Defendant-Intervenor's Motions to Dismiss for reasons explained herein.

## I. Background

### A. Sections 123 and 129 of the Uruguay Round Agreements Act

In enacting Sections 123 and 129 of the Uruguay Round Agreements Act ("URAA"), Congress established two procedures by which an adverse decision from the World Trade Organization ("WTO") Dispute Settlement Panel or Appellate Body may be implemented into domestic law. A Section 123 determination amends, rescinds, or modifies an agency regulation or practice that is found to be inconsistent with any of the Uruguay Round Agreements. 19 U.S.C. § 3533(g)(1). Under this scheme, the United States Trade Representative ("USTR") is required to consult with the appropriate congressional and private sector advisory committees, as well as to provide an opportunity for public comment, before determining whether and how to implement the agency regulation or practice at issue. *Id*. As part of the consultation process, the USTR is required to provide the relevant congressional committees with a report that describes "the proposed modification, the reasons for the modification, and a summary of the advice

---

("*Section 129 Determination*"). Plaintiffs filed their complaints here under § 1581(i) after Defendant and Defendant-Intervenor indicated they would challenge the Court's ability to hear Plaintiffs' claims concerning the *Section 123 Determination* under § 1581(c) in Consol. Court No. 07-170. U.S. Steel Br. 5.

**Consol. Court No. 07-00475**                                                                                                    Page 5

obtained" from the private sector advisory committees. *Id*. at § 3533(g)(1)(D). To take effect, the final modification must ultimately be published in the Federal Register. *Id*. at § 3533(g)(1)(F).

      A Section 129 determination amends, rescinds, or modifies the application of an agency regulation or practice in a specific antidumping, countervailing duty, or safeguards proceeding. In particular, a Section 129 determination alters a specific agency determination that is found to be inconsistent with U.S. obligations under the WTO Antidumping Agreement ("*AD Agreement*"), the Agreement on Subsidies and Countervailing Measures, or the Safeguards Agreement. 19 U.S.C. § 3538(a)(1), (b)(1). Under this procedure, the USTR must consult with the relevant congressional committees and request in writing that the pertinent agency issue a new determination consistent with the findings set forth in the WTO Panel or Appellate Body Report. *Id*. at § 3538(a)(1), (a)(3)-(5), (b)(1)-(3). Interested parties may also submit written comments on the proposed modification and, where appropriate, ask for an administrative hearing on the matter. *Id*. at § 3538(d). A Section 129 determination takes effect on or after the date on which the USTR directs the agency to implement the determination, in whole or in part, and when Commerce publishes the determination in the Federal Register. *Id*. at § 3538(c)(1)-(2).

      The Court has exclusive jurisdiction over all civil actions commenced under section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a, to contest a Section 129 determination. § 1516a(a)(2)(B)(vii); § 1581(c). In contrast, no provision of the United States

**Consol. Court No. 07-00475**                                                                                                    Page 6

Code, including § 1516a, expressly grants this or any federal court jurisdiction over challenges to a Section 123 determination.[5]

**B. The Original Antidumping Duty Order & Subsequent Developments**

On November 29, 2001, after receiving petitions from domestic producers to initiate an investigation on the subject merchandise and making a preliminary finding that such merchandise was dumped in the U.S., Commerce issued an antidumping duty order covering hot-rolled carbon steel flat products from the Netherlands. *Antidumping Duty Order: Certain Hot-Rolled Carbon Steel Flat Products From the Netherlands*, 66 Fed. Reg. 59,565, 59,566 (Dep't Commerce Nov. 29, 2001). Commerce used zeroing to calculate the final dumping margin for the subject merchandise. *Notice of Final Determination of Sales at Less Than Fair Value; Certain Hot-Rolled Carbon Steel Flat Products From The Netherlands*, 66 Fed. Reg. 50,408, 50,409 (Dep't Commerce Oct. 3, 2001); *Issues and Decision Memorandum for the Antidumping Investigation of Certain Hot-Rolled Carbon Steel Flat Products from the Netherlands; Notice of Final Determination of Sales at Less Than Fair Value (A-421-807)*, A-421-807 (Oct. 3, 2001), *available at* 2001 WL 1168309, at *7-8.

The European Communities thereafter challenged Commerce's use of zeroing in several antidumping investigations and administrative reviews before the WTO, including the investigation that resulted in the imposition of an antidumping duty order on hot-rolled carbon steel flat products from the Netherlands. *See* Request for Consultations by the European

---

[5] Defendant emphasizes that the absence of such a jurisdictional grant in the United States Code demonstrates that Congress declined to waive its sovereign immunity over challenges to Section 123 determinations, and as such, those agency proceedings are not reviewable agency actions under the APA. Def. Br. 10-11; Def. Reply Br. 3.

**Consol. Court No. 07-00475**                                                                                                          Page 7

Communities, *United States – Laws, Regulations and Methodologies for Calculating Dumping Margins ("Zeroing")*, WT/DS294/1, at 4 (June 19, 2003).  On October 31, 2005, a WTO Panel found Commerce's use of zeroing in investigations involving comparisons of weighted-average normal values to weighted-average U.S. prices to be inconsistent with U.S. obligations under the *AD Agreement*.  *See* Report of the Panel, *United States – Laws, Regulations and Methodology for Calculating Dumping Margins ("Zeroing")*, ¶¶ 8.2-8.4, WT/DS294/R (Oct. 31, 2005) ("*Panel Report*").  Specifically, the WTO Panel found that zeroing violates the *AD Agreement* as such, and as applied in the specific investigations at issue.[6]  *Id*.  The Appellate Body upheld the WTO Panel's determination on appeal and went further, stating that Commerce's use of zeroing in certain administrative reviews was also inconsistent with the *AD Agreement*.  *See* Report of the Appellate Body, *United States – Laws, Regulations and Methodology for Calculating Dumping Margins ("Zeroing")*, ¶¶ 132-35, 263(a)(i), WT/DS294/AB/R (Apr. 18, 2006).

On December 27, 2006, in response to the *Panel Report*, Commerce announced that as a general policy it would use offsetting and no longer zero negative margins in antidumping investigations involving comparisons of "average-to-average" prices.  *Section 123 Determination*, 71 Fed. Reg. at 77,722.  Commerce noted that the department's new policy would specifically apply in (1) the recalculation of the dumping margins in the "specific

---

[6] A determination by the WTO Dispute Settlement Body that a law, regulation, or measure of a WTO Member violates a WTO agreement "as such" means that the "Member's conduct – not only in a particular instance that has occurred, but in future situations as well – will necessarily be inconsistent with that Member's WTO obligations." Report of the Appellate Body, *United States – Sunset Reviews of Anti-Dumping Measures on Oil Country Tubular Goods from Argentina*, WT/DS268/AB/R, at ¶ 172 (Nov. 29, 2004), *available at* http://www.wto.org/english/tratop_e/dispu_e/cases_e/ds268_e.htm.  In contrast, an "as applied" determination means that the WTO Member's "application of a general rule to a specific set of facts" is inconsistent with that Member's WTO obligations.  *See id*. at 3 n.22.

**Consol. Court No. 07-00475**                                                                                                    Page 8

antidumping investigations challenged by the EC in [the *Panel Report* ]" and (2) all then current and future investigations involving comparisons of average-to-average prices. *Id*. at 77,725. Notably, the *Section 123 Determination* did not embrace all the findings of the WTO Appellate Body, stating that the change in policy applied only to investigations that use average-to-average comparisons and did not extend to any other kind of investigation or administrative review. *Id*. at 77,724.

On May 4, 2007, Commerce implemented its findings made under Section 129 of the URAA at the request of the USTR. *Section 129 Determination*, 72 Fed. Reg. at 25,261. In the Section 129 proceeding, Commerce recalculated the dumping margin on the subject merchandise with the use of offsetting, finding that it decreased from 2.59 % to zero. *Id*. at 25,262. The agency, therefore, revoked the antidumping order on hot-rolled carbon steel from the Netherlands, effective for entries of the subject merchandise made on or after April 23, 2007. *Id*. Importantly, Plaintiffs argued during the Section 129 proceeding that Commerce's *Section 123 Determination* was not in accordance with law because the statute prohibits the use of offsetting and requires zeroing. *Issues and Decision Memorandum for the Final Results of the Section 129 Determinations*, A-122-838, A-421-807, A-427-820, A-428-830, A-475-829, A-412-822, A-401-806, A-469-807, A-475-820, A-423-808, A-475-824, A-475-818 (Apr. 9, 2007), Def. Br. App. B at 5-7 ("*Section 129 Determination Issues and Decision Memorandum*"). Defendant, however, rejected that notion, stating that the *Section 129 Determination* was concerned only with bringing the specific investigations at issue in the *Panel Report* into conformity with U.S. obligations under the *AD Agreement*. *See id*. at 9-11.

## II.  Standard of Review

The Court assumes that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor when deciding a motion to dismiss based upon either lack of subject matter jurisdiction or failure to state a claim for which relief may be granted.  *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991).

A fundamental question in any action before the Court is whether subject matter exists over the claims presented.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Ex parte McCardle*, 74 U.S. 506, 514 (1868).  The party invoking the Court's jurisdiction bears the burden of establishing it.  *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).

The United States is immune from suit unless it consents to be sued, and "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1378 (Fed. Cir. 2008) (quotations & citations omitted).  To determine whether there is a waiver of sovereign immunity, the Court must discern the expressed intent of Congress as it appears in the statute, with ambiguities resolved in favor of the sovereign.  *See United States v. Williams*, 514 U.S. 527, 531 (1995).

Finally, assuming that all the allegations in the complaint are true, a plaintiff states a claim upon which relief may be granted when it alleges facts that are "enough to raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations omitted).  Though detailed factual allegations are not required, "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" are needed for the plaintiff's complaint to provide the defendant with fair notice of its claims and survive a motion to dismiss for failure to state a claim upon which relief may be granted.  *See id*.

### III.  Discussion

**A.  Subject Matter Jurisdiction: The *Section 123 Determination***

For the first time the Court must decide whether a challenge to a Section 123 determination as such, and as applied in a particular proceeding, falls within its exclusive subject matter jurisdiction.  Defendant asks the court to look to the true nature of the action, which allegedly is a challenge to Commerce's *Section 129 Determination*, and dismiss Plaintiffs' complaint because that kind of claim is properly brought only under § 1581(c).  Def. Br. 6, 8-9.  Alternatively, Defendant argues that a Section 123 determination is not subject to judicial review, given its absence from the list of reviewable agency determinations under § 1516a.  Def. Br. 7, 9-10.  Defendant also claims that the failure of Congress to provide for judicial review of such agency determinations, in contrast to its treatment of Section 129, demonstrates that the United States has not waived its sovereign immunity as to suits challenging a Section 123 determination.  Def Br. 10-11.  Finally, even if a challenge to the *Section 123 Determination* could conceivably fit within the confines of § 1581(i), Defendant argues that such determinations have no independent legal effect and that there is no agency action here under the APA because the determination does not aggrieve or affect Plaintiffs.  Def. Br. 7, 9-10.

Chapter 95 of Title 28 of the United States Code contains Congress's jurisdictional grant to the Court.  The first section, § 1581, is titled "Civil actions against the United States and

agencies and officers thereof," consisting of subsections (a) through (j). Each subsection of § 1581 "delineates particular laws over which the Court of International Trade may assert jurisdiction." *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988). In § 1581(i), Congress provided the Court with broad residual jurisdiction over civil actions that arise out of import transactions. *See Conoco, Inc. v. United States Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1588 (Fed. Cir. 1994). However, a caveat to subsection (i) prevents the Court from establishing jurisdiction over a challenge to an antidumping proceeding that is otherwise reviewable under § 1516a(a). § 1581(i). Thus, the subsections of § 1581 must be read in concert and a litigant may only invoke the Court's jurisdiction under § 1581(i) if (1) jurisdiction is unavailable under all other subsections of § 1581, or (2) jurisdiction is available under another subsection of § 1581, but the relief provided by that subsection is manifestly inadequate. § 1581(i); *see NEC Corp. v. United States*, 151 F.3d 1361, 1368 (Fed. Cir. 1998). Where there is doubt over the Court's ability to hear a particular claim, the Court must examine the true nature of the action to determine whether it has subject matter jurisdiction over the issue. *See Norsk Hydro Can., Inc.*, 472 F.3d at 1355.

   The Court has recognized that a facial challenge to a statute or regulation is different from a claim that a law, as applied, is contrary to law, involving unique legal questions and distinct remedies. *See, e.g.*, *Impact Steel Can. Corp. v. United States*, 31 CIT ___, ___, 533 F. Supp. 2d 1298, 1302 (2007) ("*Impact Steel*"); *Parkdale Int'l, Ltd. v. United States*, 31 CIT ___, ___, 508 F. Supp. 2d 1338, 1347-48 (2007) ("*Parkdale*"). A facial challenge involves a claim that a practice or rule is *per se* illegal, and could not be statutorily valid under any circumstances. *See Parkdale*, 31 CIT at ___ n.5, 508 F. Supp. 2d at 1347 n.5. In contrast, an as applied challenge

concerns a claim that the application of a law to a particular proceeding, and the factual determinations and legal conclusions reached as a result of the use of such rule or practice, is unlawful. *See id*., 31 CIT at ___, 508 F. Supp. 2d at 1347.

### 1. Availability of 28 U.S.C. § 1581(c) and Adequate Relief Thereunder

Under the facts of this case, the true nature of Plaintiffs' challenge to the application of the *Section 123 Determination* in a particular proceeding is nothing more than a mislabeling of the charge that the final results of the *Section 129 Determination* are contrary to law, a claim properly brought only under § 1581(c).[7] The purpose of a Section 123 determination is to amend, rescind, or modify an agency regulation or practice found to be inconsistent with any of the Uruguay Round Agreements, whereas a Section 129 determination affects the application of that regulation or practice in a specific proceeding. §§ 3533(g)(1), 3538(a)(1), 3538(b)(1). It is clear that these proceedings are indeed different in kind, and the Defendant admits as much. Def. Br. 8. However, it cannot be said in this case that the application of the *Section 123 Determination* is any different in substance from the existing *Section 129 Determination*. Here Commerce's decision to use offsetting in certain proceedings was applied to recalculate the weighted-average dumping margin for the subject merchandise. Additionally, the relief sought by the Plaintiffs in this claim is identical to that sought in the challenge to the final results of a Section 129 proceeding – that Commerce's decision to use offsetting in its calculation of the weighted-average dumping margin for the subject merchandise is contrary to law. U.S. Steel

---

[7] Pursuant to § 1581(c), this Court has exclusive jurisdiction over any civil action commenced under section 516A of the Tariff Act of 1930, codified as amended at § 1516a, which provides for judicial review of, among other proceedings, a Section 129 determination. § 1516a(a)(2)(B)(vii).

**Consol. Court No. 07-00475**                                                                                                         Page 13

Compl. ¶¶ 20-21 in Consol. Court No. 07-170; ArcelorMittal Compl. ¶¶ 29-31 in Consol. Court No. 07-170.  Thus, the court must dismiss Plaintiffs' challenge to the application of the *Section 123 Determination* because adequate relief for the claim is available under § 1581(c) and that subsection has not been shown to provide a manifestly inadequate remedy under the circumstances.

      Moreover, adequate relief exists under § 1581(c) for Plaintiffs' facial challenge to the *Section 123 Determination*.  It is true that a Section 123 determination is not one of the listed administrative proceedings that are subject to judicial review under § 1516a.  Indeed, no other provision of the United States Code expressly states whether a Section 123 determination is subject to judicial review and, if so, which federal court has jurisdiction over such an action.  However, a careful reading of the complaints and briefings in Consol. Court Nos. 07-170 and 07-475 forces the court to dismiss Plaintiffs' facial challenge to the *Section 123 Determination* here because the remedy sought in this case may be adequately provided under § 1581(c).  In Consol. Court No. 07-170, Plaintiffs challenge both the *Section 123 Determination* as such, as well as the final results of the *Section 129 Determination* under § 1581(c).  U.S. Steel Compl. ¶¶ 16-21 in Consol. Court No. 07-170; ArcelorMittal Compl. ¶¶ 25-31 in Consol. Court No. 07-170.  The Court, as it has done in other cases under § 1581(c), may address a facial challenge to a general agency practice employed by Commerce, as well as to the final results of an agency proceeding that is subject to judicial review under § 1516a.  *See*, *e.g.*, *Parkdale Int'l v. United States*, 30 CIT 551, 429 F. Supp. 2d 1324 (2006).  Equally important is the fact that Plaintiffs raised a facial challenge to the *Section 123 Determination* during the Section 129 proceeding, a claim that Defendant disregarded as being outside the scope of the proceeding.  *Section 129 Determination*

**Consol. Court No. 07-00475** **Page 14**

*Issues and Decision Memorandum* at 5-7, 9-11. Plaintiffs may contest Defendant's determination on this issue when it asks the court to review the final results of the *Section 129 Determination*, and in fact has done so in Consol. Court No. 07-170 under § 1581(c). Thus, because adequate relief lies under another subsection of § 1581, the court may not exercise jurisdiction over Plaintiffs' claims here under § 1581(i).[8] *See NEC Corp.*, 151 F.3d at 1368.

    Finally, because the court finds that it does not have jurisdiction over Plaintiffs' claims under the facts of this case as they have an adequate alternative remedy, there is nothing left for it to decide and therefore it must dismiss this action filed pursuant to § 1581(i). *See Ex parte McCardle*, 74 U.S. at 514. Accordingly, the court need not address Defendant's arguments of whether (1) the United States waived its sovereign immunity, (2) a Section 123 determination is agency action under the APA, (3) Plaintiffs have Article III constitutional and prudential standing, or (4) Plaintiffs stated a claim upon which relief may be granted.

### IV. Conclusion

    For the reasons discussed herein, Defendant and Defendant-Intervenor's Motions to Dismiss are granted as adequate relief lies for Plaintiffs' facial and as applied challenges to the *Section 123 Determination* under § 1581(c).


Date:   May 18, 2009                                      /s/ Judith M. Barzilay
        New York, New York                          Judith M. Barzilay, Judge

---

[8] The court's decision here should not be read to suggest that an agency action under Section 123 of the URAA is free from judicial review. It may be the case that, under certain facts where none of the other subsections of § 1581 provides a plaintiff with adequate relief, § 1581(i) will be the most appropriate avenue to challenge a general change in agency practice as it is adopted by the United States in a Section 123 determination. However, because the remedy provided by § 1581(c) will address the relief sought by Plaintiffs, the facts of this case do not permit the court to assume jurisdiction under § 1581(i).

Slip Op. 09-45

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| UNITED STATES STEEL CORPORATION AND ARCELORMITTAL USA, INC., | : | |
| Plaintiffs, | : | |
| and | : | |
| NUCOR CORPORATION | : | **Before: Judith M. Barzilay, Judge** |
| Plaintiff-Intervenor, | : | **Consol. Court No. 07-00475** |
| v. | : | |
| UNITED STATES, | : | |
| Defendant, | : | |
| and | : | |
| CORUS STAAL BV, | : | |
| Defendant-Intervenor. | : | |

## JUDGMENT

Upon consideration of the briefing filed by Plaintiffs United States Steel Corporation and ArcelorMittal USA, Inc., Plaintiff-Intervenor Nucor Corporation, Defendant United States, and Defendant-Intervenor Corus Staal BV, the court's opinion in this action on May 18, 2009, and all other papers filed in this action, it is hereby

**Consol. Court No. 07-00475**                                                                                   **Page 2**

 **ORDERED** that Defendant and Defendant-Intervenor's Motions to Dismiss are

**GRANTED**; and it is further

 **ORDERED** that this case, Consol. Court No. 07-00475, is **DISMISSED**.


Date: May 18, 2009            /s/ Judith M. Barzilay
    New York, New York          Judith M. Barzilay, Judge

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____   By: _____
                                              Deputy Clerk